[Civ. No. 21886. Second Dist., Div. Three. Apr. 19, 1957.]

VIDO ARTUKOVICH et al., Plaintiffs; ARTUKOVICH BROS., INC. (a Corporation), Plaintiff and Appellant, v. ST. PAUL-MERCURY INDEMNITY COMPANY, INC. (a Corporation), Defendant and Appellant; INDUSTRIAL INDEMNITY COMPANY (a Corporation), Respondent.

Collins & McKenna and John F. McKenna, Jr., for Plaintiff and Appellant.

Spray, Gould & Bowers for Defendant and Appellant.

Hunter & Liljestrom and Harold J. Hunter for Respondent.

VALLÉE, J.—The question to be decided is whether either or both of two casualty insurance policies cover a loss sustained by the insured, Artukovich Bros.

St. Paul-Mercury Indemnity Company, to be called St. Paul, issued its liability policy in which it agreed to pay on behalf of the insured all sums which insured "shall become obligated to pay by reason of the liability imposed upon the insured by law or contract for damages arising out of occurrences. . . . Bodily injury . . . sustained by any person or persons"; except liability for bodily injury to "any employee of the Insured . . . while engaged in the employment of the Insured, or to any obligation for which the Insured may be held liable under any workmen's compensation law."

Industrial Indemnity Company, to be called Industrial, issued its standard "Workmen's Compensation and Employers' Liability Policy" in which it agreed "[t]o pay promptly benefits as required by the Workmen's Compensation Laws of the State of California to any person entitled thereto" and "[t]o pay all sums which the Employer, as an Employer, shall become obligated to pay for damages . . . because of bodily injury, . . . sustained within California. . . ."

While these policies were in force and on March 19, 1951, Artukovich Bros. was engaged in a construction job in Kern County. Vido Artukovich, an employee, stockholder, and officer of Artukovich Bros., was job foreman. Vido was the superior of Orville Clark, also an employee of Artukovich' Bros. On March 19, 1951, Clark was injured in an altercation with Vido.

On May 29, 1951, Clark brought an action in the Superior Court of the County of Los Angeles against Artukovich Bros. and Vido, titled *Clark* versus *Artukovich* and numbered 586886. The basis of the action was an alleged assault and battery committed March 19, 1951, by Vido on Clark. The cause of action against Artukovich Bros. was on the theory of *respondeat superior*. The complaint alleged that Clark was an invitee on the property on which the alleged assault took place and that Vido was the employee of Artukovich Bros., acting within the scope and course of his agency, authority, and employment at the time. St. Paul assumed and controlled the defense of that action.

On August 13, 1951, Clark instituted a proceeding before the Industrial Accident Commission against Artukovich Bros. for an award of compensation for injuries sustained in the altercation of March 19, 1951. Industrial defended the proceeding on behalf of Artukovich Bros. The commission found that on March 19, 1951, Clark was employed by Artukovich Bros. and that "he did not sustain any injury or injuries arising out of and occurring in the course of said employment."[1] The order of the commission became final.

Thereafter action 586886 came on for trial in the superior court before Judge Houser. As a second affirmative defense in that action the answer of Artukovich Bros., prepared by St. Paul's attorneys, alleged that Clark was in the employ of the defendants and acting in the course and scope of his employment at the time of the alleged assault; that the

---

[1]The findings and award of the commission were:

"1. Orville W. Clark, born November 24, 1913, was employed as a bulldozer operator on March 19, 1951, at Bakersfield, California, by Artukovich Bros., Inc., a corporation, whose compensation insurance carrier covering the claim herein was Industrial Indemnity Company, a corporation, and both the employer and employee were subject to the provisions of the Workmen's Compensation Insurance and Safety Laws of the State of California.

"2. Applicant did not sustain any injury or injuries arising out of and occurring in the course of said employment.

"Award

"Now, Therefore, it is ordered that the applicant take nothing from defendants by reason of the claim herein asserted."

defendants were subject to the Workmen's Compensation Act as was Clark; that by the terms of the Workmen's Compensation Act Clark was barred from maintaining any action for damages by reason of the alleged assault and he was confined to proceedings under the Act. The attorneys for St. Paul moved for a separate trial of the issues raised by the second affirmative defense. The motion was granted. After the separate trial Judge Houser found that the order of the Industrial Accident Commission was res judicata on those issues; Clark was not barred from maintaining the action for damages; and the superior court had jurisdiction to try the issues made by the complaint and answer. Trial was then had of the other issues before a jury, resulting in a judgment in favor of Clark against Artukovich Bros. and Vido which became final. St. Paul and Industrial refused to pay the judgment. To avoid execution Artukovich Bros. paid it.

Plaintiffs Artukovich Bros., Inc., and Vido then brought this action against St. Paul and Industrial for a declaration of their rights under the policies.[2] The complaint alleged the foregoing facts, prayed that the rights of the parties under the policies be declared and that each insurer be ordered to pay the judgment in action 586886. St. Paul answered, pleading: it was not required to pay when injury was sustained by "any employee of the Insured . . . while engaged in the employment of the Insured"; it assumed the defense of action 586886 under a reservation of rights in the event Clark was determined to be an employee; it thereafter came to the conclusion Clark was an employee and it tendered the defense to Industrial; Industrial failed to accept the defense and St. Paul continued with it, keeping its reservation of rights in effect. Industrial answered, pleading: the award of the Industrial Accident Commission is res judicata; the defense of action 586886 was not tendered to it; its policy did not insure against the judgment in that action. St. Paul filed a cross-complaint in which it alleged Clark was an employee of Artukovich Bros. and was working as such employee during the altercation; on June 22, 1951, it tendered the defense of action 586886 to Industrial; it paid the expense of defending that action; Artukovich Bros. had refused to reimburse it. The prayer was for judgment against Artukovich Bros. for such expense.

---

[2] Vido Artukovich was named originally as a party plaintiff. He dismissed below.

This action was tried before Judge Herndon who found the facts as we have stated them and that on June 15, 1951, St. Paul delivered a letter to Artukovich Bros. stating, ''We are pleased to be able to defend you and we expect that you will shortly receive a communication from our attorneys requesting your signature to an answer or possible [sic] some other pleading'' and that ''In the event it becomes established that the plaintiff Orville W. Clark was an employee at the time of the alleged assault our policy, of course, would not cover for such an injury. Your contract with Industrial Indemnity carries an employers liability coverage and the entire matter will at that time be referred to that carrier for appropriate handling''; at the time the letter was dispatched St. Paul had established by its preliminary investigation that Clark was an employee of Artukovich Bros. on March 19, 1951; at no time did St. Paul make any reservation of its rights under its policy other, or broader in scope, than the reservations contained in the letter to Artukovich Bros.; the application to the Industrial Accident Commission and action 586886 referred to one and the same altercation.

Judge Herndon concluded: 1. The finding of the Industrial Accident Commission that Clark did not sustain any injury arising out of and occurring in the course of his employment is binding on Artukovich Bros. and on its privies, who include St. Paul and Industrial. 2. The findings and judgment in action 586886 that Clark did not sustain any injury arising out of and occurring in the course of his employment are binding on Artukovich Bros. and on St. Paul as its privy and indemnitor. 3. The acts and conduct of St. Paul in controlling the defense of action 586886 and procuring a finding that Clark sustained no injury arising out of and occurring in the course of his employment estop it from attacking said finding and from urging a different finding or set of facts in the case at bar. 4. By restricting its notice of reservation of rights under its policy to the ground of a contested exclusion applicable by reason of Clark's employment, and by failing to allege any other policy defenses, St. Paul waived and is estopped now from claiming any other different or additional defenses to this action. 5. St. Paul's policy is a general liability policy and includes coverage for all liabilities of the insured except those specifically excepted. The language of the exclusion of coverage for employees ''while engaged in the employment of the insured'' excludes coverage in a case where a claimed injury arises

out of and occurs in the course of an injured employee's employment, and does not exclude coverage in a case where the injuries do not arise out of and occur in the course of the injured person's employment and in which liability is imposed solely on the theory of respondeat superior. 6. Industrial's policy obligates it to pay sums which Artukovich Bros. becomes obligated to pay for injuries which arise out of and occur in the course of an injured employee's employment, and does not include coverage for injuries which do not so arise and in which liability is imposed on the insurer solely on the theory of respondeat superior. 7. Liability in action 586886 was imposed on Artukovich Bros. solely on the theory of respondeat superior. Clark's injuries did not arise out of and occur in the course of his employment, nor was he at the time the injuries were sustained engaged in the employment of Artukovich Bros. within the meaning of any exclusion contained in St. Paul's policy. 8. There was no valid or collectible insurance available to Artukovich Bros. on March 19, 1951, other than St. Paul's policy.

Judgment was that Artukovich Bros. is entitled to indemnity from St. Paul for the liability imposed in action 586886; it has no right to indemnity from Industrial; Artukovich Bros. recover the amount of the judgment in action 586886 from St. Paul. St. Paul appeals from the judgment against it in favor of Artukovich Bros. Artukovich Bros. appeals from that part of the judgment which denies it relief against Industrial.

### The Appeal of
### St. Paul-Mercury Indemnity Company

St. Paul contends the finding of the Industrial Accident Commission that Clark did not sustain any injury "arising out of and occurring in the course of said employment" was not an adjudication he did not sustain injuries "while engaged in the employment of the Insured." St. Paul further contends the findings and judgment in action 586886 are not binding on it and it is not estopped from contending for the nonbinding character thereof; it is not estopped to claim the benefits of the exclusionary provisions of its policy by reason of the fact it assumed the defense of action 586886.

It is unnecessary to determine whether the order of the Industrial Accident Commission is binding on St. Paul. The finding in action 586886 that the findings and award of the Industrial Accident Commission "constitute a full and com-

plete determination of the issue raised by the'' second affirmative defense and is res judicata on those issues—i.e., that Clark did not sustain any injury arising out of and occurring in the course of his employment—is res judicata in this action and, whether right or wrong, is binding on St. Paul. St. Paul will not be permitted to relitigate in this action a question of fact on which the tort judgment was predicated. Ordinarily the insurer is bound by all facts and matters necessarily adjudicated in the original action. (*Bachman* v. *Independence Indem. Co.,* 112 Cal.App. 465, 469 [297 P. 110, 298 P. 57]; *Lamb* v. *Belt Cas. Co.,* 3 Cal.App.2d 624, 631 [40 P.2d 311]; *New York etc. Co.* v. *Superior Court,* 30 Cal.App.2d 130, 133 [85 P.2d 965].) It is bound by any material finding of fact essential to the judgment of tort liability which is also decisive of the question of coverage. (*East* v. *Fields,* 42 Wn.2d 924 [259 P.2d 639, 640]; Rest., Judgments, 293, § 68.) ▉ The rule is stated in *Miller* v. *United States Fid. & Cas. Co.,* 291 Mass. 445 [197 N.E. 75, 77]:

"Where an action against the insured is ostensibly within the terms of the policy, the insurer, whether it assumes the defense or refuses to assume it, is bound by the result of that action as to all matters therein decided which are material to recovery by the insured in an action on the policy."

*Jones* v. *Zurich General Acc. & Liab. Ins. Co.,* (2 Cir.) 121 F.2d 761, was an action against an insurer after the plaintiff had recovered a judgment against the insured which was unsatisfied. The insurer had defended the action against the insured. As a defense to the action against it the insurer pleaded "that plaintiff was when injured an employee of the insured at work as such on premises described in the policy; and also that she was an employee injured in the course of her employment by the assured and to whom it was liable under the New York Workmen's Compensation Law." A summary judgment was granted the plaintiff. On review, after stating that " [e]very material fact determined by the state court in that action was conclusively settled by the final judgment 'so that it cannot be further litigated in a subsequent suit between the same parties or their privies whether the second suit be for the same or a different cause of action' " and that the insurer and insured were in privity, the court on rehearing said (p. 764):

" [T]here was an alternative reason, originally pleaded, argued on appeal, and mentioned in our opinion, which we could have chosen for affirming the district court's judgment.

"This reason was that the judgment recovered by plaintiff against the insured in the state court foreclosed against defendant the question of plaintiff's and insured's relationship. That question was necessarily involved in the original suit. N.Y. Workmen's Compensation Law, §§ 10, 11, Consol. Laws, c. 67. It is true that this defendant, acting for the insured, did not originally plead it; but it did seek to raise it by motion to amend, and argued it on appeal. Recovery in such circumstances conclusively settles against the defendant all defenses which might have been pleaded and proved, as well as those which actually were. *Chicot County Drainage District* v. *Baxter State Bank*, 308 U.S. 371 [60 S.Ct. 317, 84 L.Ed. 329]; *Grubb* v. *Public Utilities Commission*, 281 U.S. 470 [50 S.Ct. 374, 74 L.Ed. 972]. Defendant here, although not a nominal party in the original action, is likewise bound as the person ultimately liable. *Washington Gaslight Co.* v. *District of Columbia*, 161 U.S. 316 [16 S.Ct. 564, 40 L.Ed. 712]; *Oceanic Steam Navigation Co.* v. *Campania Transatlantica Espanola*, 144 N.Y. 663 [39 N.E. 360]."

It was held in *Muise* v. *Century Indem. Co.*, 319 Mass. 172 [65 N.E.2d 98], that the finding in a prior action against an insured that the decedent was a guest and not an employee of the insured was equivalent to finding that the decedent's presence in the insured automobile at the time of the accident had no causal relation to employment of the decedent by the insured, and that the finding was binding on the insurer.

█ It follows St. Paul cannot deny the fact that Clark did not sustain any injury arising out of and occurring in the course of his employment. But it can still insist on any defenses not necessarily inconsistent with that fact. (*Sweeney* v. *Frew*, 318 Mass. 595 [63 N.E.2d 350, 351]; 1 Freeman on Judgments, 5th ed., 991, § 450.) █ The question is whether the defense now insisted on—that Clark sustained injuries "while engaged in the employment of the insured"— is inconsistent with the finding that he did not sustain any injury arising out of and occurring in the course of his employment. We have concluded it is.

Generally, exclusionary clauses in liability policies use the words "engaged in the business" of the insured. Some use the words "engaged in the employment" of the insured as does St. Paul's policy. The courts have split as to whether to apply the decisions construing the language of workmen's

compensation statutes as to "arising out of and in the course of the employment," and conflicting results have been reached in determining whether an employee was engaged in the employer's business or was engaged in the employer's employment under particular circumstances.[3]

Labor Code, section 3600, imposes liability on an employer for any injury sustained by his employee "arising out of and in the course of the employment."[4] The parties agree that under California law an injury "arises out of" the employment when it is incidental to, or has some causal connection with, the employment. They also agree that "in the course of" the employment refers to time and place.

*Madin* v. *Industrial Acc. Com.*, 46 Cal.2d 90 [292 P.2d 892], says (p. 93):

"Consonant with those principles it has been held in various situations that injuries occurring in the course of employment also arise out of the employment and hence were compensable although the factor which put in motion the force causing the injury was something over which the employer had no control and with which he had no connection."

(Also see *Truck Ins. Exchange* v. *Industrial Acc. Com.*, 147 Cal.App.2d 460, 461 [305 P.2d 55].)

In *Satchell* v. *Industrial Acc. Com.*, 94 Cal.App.2d 473 [210 P.2d 867], this court held (p. 478):

"It is too well settled to admit of question that an injury is compensable if the employee is at the time *engaged in doing something he might reasonably have been expected to do while in the performance of his duty.*" (Emphasis added.)

---

[3]Cases said to construe the term "arising out of and in the course of his employment," as used in workmen's compensation statutes and holding the term is not controlling on the question of the construction of the phrase "engaged in the business . . . of the insured" as used in the exclusionary clause of a liability policy: *B. & H. Passmore M. & R. Co.* v. *New Amsterdam Cas. Co.*, (10 Cir.) 147 F.2d 536; *Getlin* v. *Maryland Cas. Co.*, (9 Cir.) 196 F.2d 249 [50 A.L.R.2d 73].

[4]Labor Code, section 3600: "Liability for the compensation provided by this division, in lieu of any other liability whatsoever to any person except as provided in section 3706, shall, without regard to negligence, exist against an employer for any injury sustained by his employees arising out of and in the course of the employment and for the death of any employee if the injury proximately causes death, in those cases where the following conditions of compensation concur:

"(a) Where, at the time of the injury, both the employer and the employee are subject to the compensation provisions of this division.

"(b) Where, at the time of the injury, the employee is performing service growing out of and incidental to his employment and is acting within the course of his employment.

"(c) Where the injury is proximately caused by the employment, either with or without negligence. . . ."

■ The word "engaged" means occupied; employed. (Webster's New Inter. Dict., 2d ed.) ■ To be "engaged in employment" means to be rendering service for the employer under the terms of the employment. (*State* ex rel. *Kusie* v. *Weber*, 72 N.D. 705 [10 N.W.2d 741, 745] ; *Francis* v. *Scheper*, 326 Mich. 441 [40 N.W.2d 214, 217].) *City of St. Petersburg* v. *Cashman*, (Fla.) 71 So.2d 733, 734, holds "engaged in employment" means doing a thing necessary and incidental to the work.

In *I-L Logging Co.* v. *Manufacturers & Wholesalers Indem. Exchange*, 202 Ore. 277 [273 P.2d 212, 275 P.2d 226], the policy contained the identical exclusionary clause found in St. Paul's policy. It was contended the words "engaged in the employment of the Insured" do not mean the same as "arising out of and in the course of his employment" as those words occur in the Workmen's Compensation Law. After an exhaustive review of the authorities the court stated (p. 224 [273 P.2d]) :

"We have encountered no decision which endeavors to disclose any difference in meaning between 'engaged in the employment' and 'arising out of and in the course of his employment.' The practical affairs of life, according to our belief, would gain nothing of consequence if a court should undertake to discover a difference in the connotation of those two groups of words. We do not believe that the Passmore decision [*B. & H. Passmore M. & R. Co.* v. *New Amsterdam Casualty Co.*, 10 Cir., 147 F. 2d 536] holds that the two terms actually differ in meaning, but indicates that courts, in determining whether a workman was 'engaged in his employment', are more inclined to answer 'no' than when they inquire whether he was engaged 'in the course of his employment.' The difference is one of judicial attitude rather than one of difference in phraseology. The difference has its origin in the fact that in the one case a contract of insurance is the subject of attention and in the other an item of remedial legislation. We can see merit in the distinction. In all other respects we embrace the Lumber Mutual opinion [*Lumber Mutual Casualty Ins. Co.* v. *Stukes*, 4 Cir., 164 F.2d 571]."

It was held in *Moss* v. *St. Paul-Mercury Indem Co.*, (La. App.) 35 So.2d 867, that since the employee's injury did not arise out of and in the course of his employment, it did not occur "while engaged in the employment . . . of the insured." (Also see *Cardinal* v. *United States Cas. Co.*, 195

Misc. 309 [90 N.Y.S.2d 772], aff. 302 N.Y. 853 [100 N.E.2d 47].)

■ Exceptions and exclusions in a policy of insurance are to be construed strictly against the insurer and liberally in favor of the insured. (*Arenson* v. *National Auto. & Cas. Ins. Co.*, 45 Cal.2d 81, 83 [286 P.2d 816]; *Pendell* v. *Westland Life Ins. Co.*, 95 Cal.App.2d 766, 769 [214 P.2d 392].)

■ The understanding of an ordinary person is the standard used in construing a contract of insurance, and any ambiguity in the language must be resolved against the insurer. (*Arenson* v. *National Auto. & Cas. Ins. Co.*, supra.) It has been held that the phrase ''engaged in the employment'' is ambiguous. (*Francis* v. *Scheper*, 326 Mich. 441 [40 N.W.2d 214, 217]. *Cf. Elliott* v. *Behner*, 150 Kan. 876 [96 P.2d 852, 855].) ■ Liability insurance contracts should, if possible, be construed so as not to be a delusion to those who have bought them.

The liability on which Clark recovered in action 586886 was not a liability based on the relation of employer and employee or because Clark was engaged in the employment of Artukovich Bros. at the time of the altercation. It was a liability growing out of the relationship between Artukovich Bros. and Vido—*respondeat superior.* The fact that Clark was not engaged in the employment of Artukovich Bros. was essential and indispensable to the judgment against the latter in action 586886. ■ Neither the fact that Clark was ''an employee'' of Artukovich Bros. nor the fact that he was on its premises at the time of the altercation establishes that he was engaged in his employment at that time. Everyone who is engaged in the employment of the insured would be its employee, but not every employee is engaged in the employment of the insured all the time. (See *Moss* v. *St. Paul-Mercury Indem. Co.*, (La.App.) 35 So.2d 867; *Green* v. *Travelers Ins. Co.*, 286 N.Y. 358 [36 N.E.2d 620]; *Hardware Mut. Cas. Co.* v. *Ozmun*, 217 Minn. 280 [14 N.W.2d 351].)

Applying the rule that an exclusionary clause should be construed strictly against the insurer, we are of the opinion that the defense now insisted on by St. Paul—that Clark sustained injuries ''while in the employment of the insured''—is inconsistent with the finding in action 586886 that he did not sustain any injury arising out of and in the course of his employment. ■ The phrase ''while engaged in the employment of the Insured'' encompasses both ''arising out of''

and "in the course of" the employment. The term "engaged in" connotes more than time and place—occurring in the course of the employment; it also connotes "occupied in"—arising out of the employment. The phrase "while engaged in the employment of the Insured" includes the concept that the employee was at his place of employment during working hours and that he was occupied in the employment at the time of injury, i.e., that the injury was incidental to the employment. We agree with the Supreme Court of Oregon that there is no difference in meaning between "engaged in the employment" and "arising out of and in the course of the employment." Undoubtedly, the run-of-the-mill person, by whose understanding the exclusionary clause must be construed, would not discern any difference in meaning. It would be a curious result if St. Paul, having pleaded in action 586886 in effect that Clark was engaged in the employment of Artukovich Bros. at the time of the altercation, and having lost on that issue, could now defend versus Artukovich Bros. on the same ground. The court correctly held that Artukovich Bros. is entitled to indemnity from St. Paul for the liability imposed in action 586886.

### The Appeal of Artukovich Bros.

This appeal is from that part of the judgment in favor of Industrial. Counsel for Artukovich Bros. do not press its appeal wholeheartedly. With commendable candor they say, "We feel in all fairness, however, that the pattern of coverage indicates that where one coverage ends the other begins." In other words, if St. Paul's policy covers, Industrial's does not. Since we have held that St. Paul's policy covers the loss sustained by Artukovich Bros., it would appear in view of this concession that Industrial's does not. There is another reason why the judgment for Industrial must be affirmed. Its policy contains this condition:

"CONDITIONS . . . F. Notice of Injury, Claim or Suit. Written notice of any such injuries, with the fullest information available, and of any claim or suit resulting therefrom, and every demand, notice, summons or other process served upon the Employer shall be forwarded as soon as practicable, to the Company by the Employer. . . ."

It is conceded that Artukovich Bros. did not comply with this provision in any particular. No one representing it ever requested Industrial to appear for it in action 586886, and

it did not appear in that action. No suit paper was forwarded to it. The evidence is uncontradicted that at no time did Artukovich Bros. take the position that Industrial was required to or should defend that action. The court in the action at hand found: "At no time did defendant Industrial Indemnity Company assume or undertake any part of the defense of said action. At no time did plaintiff personally, through any of its officers or employees, tender the defense of said action to defendant Industrial Indemnity Company, or demand that said defendant undertake the defense of said action," and concluded: "In failing personally to give written notice of, or to demand or tender the defense of said action 586886 to defendant Industrial Indemnity Company, plaintiff failed to comply with a material and substantial condition of its said policy and contract of insurance with said defendant."

In the absence of waiver or estoppel it is well settled that if a liability policy makes compliance with a "Notice of Injury, Claim or Suit" provision such as that in Industrial's policy a condition precedent to liability, no recovery can be had where the provision has not been complied with if prejudice to the insurer has resulted. (*Abrams* v. *American Fid. & Cas. Co.*, 32 Cal.2d 233 [195 P.2d 797]; *Gibson* v. *Colonial Ins. Co.*, 92 Cal.App.2d 33 [206 P.2d 387]; *Aronson* v. *Frankfort etc. Ins. Co.*, 9 Cal.App. 473, 475-478 [99 P. 537]. See cases collected 76 A.L.R. 23, 182, 123 A.L.R. 950, 981, 139 A.L.R. 771, 781, 18 A.L.R.2d 443, 452.) There is no claim of waiver or estoppel.

Whether an insured has complied with a "Notice of Injury, Claim or Suit" is a question of fact. (*Reed* v. *Pacific Indem. Co.*, 101 Cal.App.2d 151, 159 [225 P.2d 255].) There is a presumption that prejudice occurred. The presumption is not a conclusive one. The burden of proving an excuse for a failure to give notice of suit, and to forward the complaint, process, and other suit papers to the insurer rests on the insured. (8 Appleman, Insurance Law and Practice, 145, § 4746.) No such proof was made. "The ultimate conclusion in each case must depend on its own facts." (*Abrams* v. *American Fidelity & Cas. Co., supra*, 239.) The failure of Artukovich Bros. to comply with the "Notice of Injury, Claim or Suit" provision of Industrial's policy is nonetheless a breach notwithstanding the fact the company had notice of the injury and appeared in the proceeding before the Industrial Accident Commission. (*Potter* v. *Great*

*American Indem. Co.*, 316 Mass. 155 [55 N.E.2d 198, 199].) Pertinent evidence was introduced and the trial court found in accordance with the presumption that prejudice resulted. We cannot say as a matter of law that the finding is unsupported.

Affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.

The petition of defendant and appellant for a hearing by the Supreme Court was denied June 12, 1957.